UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RENA CHANCELLOR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 11-CV-762-JED-FHM |
| | ) |
| **TOWN OF SPORTSMEN ACRES, et al.,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

The Court has for its consideration the following submissions by the parties: Plaintiff's Motion for Partial Summary Adjudication, and Brief in Support (Doc. 17), Motion for Summary Judgment by Defendant Town of Sportsmen Acres (Doc. 12), and Motion for Summary Judgment by Defendants Rex Morgan, Dennis Logan, and Dusty Brower (Doc. 14).

### Background

Plaintiff, Rena Chancellor, formerly the Town Clerk of the defendant Town of Sportsmen Acres ("Sportsmen Acres" or the "Town"), brings this lawsuit against Sportsmen Acres, and Rex Morgan, Dennis Logan, and Dusty Brower (collectively, the "individual defendants"). Sportsmen Acres is a municipal corporation organized under the laws of the State of Oklahoma, and located in Mayes County. Sportsmen Acres is governed by a Board of Trustees (the "Board") comprised of four Board members. The individual defendants are public officials of Sportsmen Acres. Specifically, Rex Morgan is the current Mayor and a Board member, Dennis Logan is the former Mayor and a former Board member, and Dusty Brower is a former Board member. The individual defendants were, at all times relevant to this litigation, members of the

Board.[1]  Chancellor was the Town Clerk for Sportsmen Acres from May, 2005 to December, 2010.

During her time as Town Clerk, Chancellor worked closely with Mayor Logan. Their relationship was not without conflict. Among other things, the two disagreed about the extent of the Mayor's control over Chancellor's duties as Town Clerk. In addition, Logan was, at some time prior to November of 2010, allegedly interested in cutting Chancellor's hours to reduce the town budget. In the months leading up to November of 2010, Chancellor complained to the City Attorney, Lisa Bohannon, on several occasions about Mayor Logan's behavior toward Chancellor. Chancellor decided that Logan should be removed as Mayor. To that end, Chancellor drafted a statement which detailed all of her complaints against Logan. On November 23, 2010, Chancellor read her statement (hereinafter referred to as the "speech" or the "statement") to the Board and the public in attendance at a town meeting of the Board. (*See* Doc. 19-2). Among the topics in her statement, Chancellor alleged that Mayor Logan had engaged in bullying behavior towards her, impersonated a police officer, and destroyed a computer cable owned by the Town.

Chancellor's service as Town Clerk ended shortly thereafter, on December 14, 2010. Specifically, the Board announced during the course of the December 14, 2010 Board meeting that the Board was terminating Chancellor's employment, with two weeks notice from that date. Chancellor did not resume her duties after the December 14 meeting. Chancellor claims that she was fired by the Board as a result of her statement given during the November 23, 2010 Board meeting. As a result of her termination, Chancellor brought the instant lawsuit against Sportsmen Acres and the individual defendants, asserting claims under 42 U.S.C. § 1983 and

---

[1] The fourth Board member at the time of Chancellor's termination, David Hurst, has not been named as a defendant.

Oklahoma common law. As noted, Chancellor, Sportsmen Acres, and the individual defendants each filed motions for summary judgment.

## Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## Analysis

### I. Chancellor's Section 1983 Claims against the Individual Defendants

#### A. Individual Capacity Claim

Chancellor's § 1983 claim against the individual defendants in their individual capacity is based upon an alleged deprivation of her free speech rights under the First Amendment to the United States Constitution.

"[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). Indeed, the First Amendment protects public employees from adverse employment actions in retaliation for their exercise of free speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). When analyzing a free speech claim based on retaliation by an employer, the Tenth Circuit applies a five-prong test which has been distilled from *Pickering* and *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a subsequent First Amendment retaliation case. *See Couch v. Bd. of Trs. of the Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009). The *Garcetti/Pickering* test includes the following inquiries:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether

4

> the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Leverington v. City of Colorado Springs*, 643 F.3d 719, 724 (10th Cir. 2011). The first three parts of the *Garcetti/Pickering* test are issues of law for the Court to decide. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

The individual defendants argue that summary judgment is appropriate because Chancellor's speech was pursuant to her official duties and the matters on which she spoke were not of public concern. For reasons stated below, the Court finds that the subjects of Chancellor's speech were not of public concern, and as such, her First Amendment rights were not violated.

Whether Ms. Chancellor's speech was a matter of public concern is a question of law. *Leverington*, 643 F.3d at 727 (citing *Baca v. Sklar*, 398 F.3d 1210, 1219 (10th Cir. 2005)). "Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) (internal quotation marks omitted); *see also City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) ("[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. "Although speech related to internal personnel disputes ordinarily does not involve public concern, speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ... clearly concerns matters of public import." *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998). Generally speaking, courts construe public concern "very narrowly." *Flanagan v. Munger*, 890 F.2d 1557, 1563 (10th Cir. 1989).

5

The parties have condensed plaintiff's November 23, 2010 statement before the Board into three categories: complaints about workplace treatment; allegations that Mayor Logan impersonated a police officer; and Logan's cutting of a computer cable (i.e. destruction of town property). Each is hereafter evaluated as to whether they are of public concern.

### 1. *Workplace treatment*

Chancellor complained of mistreatment by Logan in the workplace, which included alleged verbal abuse and bullying behavior. The Tenth Circuit has been clear that "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). Recently, in *Morris v. City of Colorado Springs*, 666 F.3d 654 (10th Cir. 2012), the Tenth Circuit addressed a nurse's complaints, which alleged that she was subjected to demeaning comments, being flicked in the head by a doctor with his finger, and being hit by bodily tissue thrown at her by a doctor. The court held that her notice to the hospital of these issues did not raise an issue of public concern. *Id.* at 663. Given the Tenth Circuit's holding in *Morris* and the conduct at issue in that case, the Court finds that the matters raised in Chancellor's speech regarding work place treatment do not rise to the level of being a public concern.

### 2. *Impersonating a Police Officer*

Chancellor made hearsay allegations that she had been told of an instance where Logan was impersonating a police officer through his use of a town police cruiser. The individual defendants argue that the Board was already aware of this allegation, thereby making the allegation of no interest to the public at the time of Chancellor's statements to the Board.

6

Chancellor responds that the record does not support the individual defendants' allegation that the Board was already aware of Chancellor's concern.

This Court has examined the materials submitted in connection with the parties' summary judgment briefing and has found that it is unclear, based upon the evidence submitted, whether the Board was aware of the allegation that Logan had been impersonating a police officer. Regina Phillips testified that David Hurst, a Board member at the time of Chancellor's statement, stated that he was "aware of some of the things" included in Chancellor's speech. (Doc. 13-28). This statement alone, assuming it to be admissible as non-hearsay, does not establish that the Board, or any member of the Board, was aware, prior to the November 23, 2010 meeting, of the allegation that Logan had been impersonating a police officer. The Court must therefore address whether Logan's alleged conduct is a matter of public concern under the assumption that it was news to the Board.

Chancellor's written statement which she read to the Board stated the following regarding Logan's alleged impersonation of an officer:

> [Logan] would come out in the night and hide from the police officer and spy on them [sic]. He has even come out and sat in the store parking lot in a patrol car, as though he was [sic] on police duty. One of the Mayes county deputies said he stopped about two O clock [sic] in the morning to talk [to] the officer on duty and it was Dennis [Logan] sitting in the police car.

(Doc. 15-13).[2] This statement alone – while it does suggest unusual behavior on the part of the Town's Mayor – does not establish "corruption, impropriety, or other malfeasance" on Logan's part. *See Dill*, 155 F.3d at 1202. "[I]t is not always enough that 'its subject matter could in [certain] circumstances, [be] the topic of a communication to the public that might be of general

---

[2] It is undisputed that a police cruiser was kept at Logan's personal residence. The Town had a long-standing practice of keeping police cruisers at the private residences of Town officials who lived in Sportsmen Acres because the Town had no location to secure the cruisers. (Doc. 17-5).

interest.' What is *actually said* on that topic must itself be of public concern." *Wilson v. City of Littleton, Colo.*, 732 F.2d 765, 769 (10th Cir. 1984) (quoting *Connick*, 461 U.S. at 148 n.8) (italics added).

### 3. *Cutting of Computer Cable*

In Chancellor's statement to the Board, she discussed Logan's cutting of a $40 computer cable which provided internet connectivity to the Town's police department. The individual defendants again argue that the Board was already aware of this conduct, making it no longer of public concern, assuming it had ever been. This time, the record evidence supports the individual defendants' contention.

The individual defendants state that, prior to the November 23, 2010 meeting, the Chief of Police informed the Board of the cutting of the internet cable. (Doc. 15, at 3, Doc. 15-14). Chancellor does not dispute this fact. (Doc. 21, at 3).[3] To qualify for first amendment protection in this context, the speech must be "a subject of general interest and of value and concern to the public *at the time of publication*." *Roe*, 543 U.S. at 83–84. Here, Chancellor's statements regarding the alleged destruction of property had been publicly revealed in a prior Board meeting by the Chief of Police. Because this information was already known to the Board and the general public at time, Chancellor's statements related to the alleged destruction of property were not of public concern.

### 4. *Chancellor's Motives*

"In analyzing whether speech constitutes a matter of public concern, we may focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely

---

[3] Chancellor's response to the individual defendants' motion for summary judgment incorporates by reference her response to the Town of Sportsmen Acres motion for summary judgment, as the statement of facts in both motions for summary judgment are identical. (Doc. 22, at 1-2).

8

deals with *personal disputes and grievances unrelated to the public's interest.*" *Leverington*, 643 F.3d at 727 (internal quotation omitted; emphasis in original). Thus, in addition to whether Chancellor's statements were, in and of themselves, of public concern, the Court must consider Chancellor's motivations in making the statement. Chancellor testified that she was aware, prior to her statement to the Board, that Logan desired to cut her hours:

> Q   Okay. At any time were you aware of any efforts to reduce the number of hours you were working?
>
> A   You mean that there at the end?
>
> Q   At any time.
>
> A   Oh, yeah, Dennis wanted to.
>
> Q   And when did you first learn of that?
>
> A   He brought it up in a meeting, just out of the blue, but I don't remember which meeting it was. He called it "budget cuts," that he wanted to do budget cuts in operation hours in the office.
>
> Q   Okay. How far before your termination do you believe that this was?
>
> A   Two or three months.

(Doc. 15-7). Based upon Chancellor's knowledge regarding potential cuts to her hours, she may have desired to take action to prevent such cuts. This possible motive for Chancellor's speech to the Board reinforces the Court's conclusion that her statement was in fact not of public concern.

Having determined that Chancellor's speech was not of public concern, the individual defendants are entitled to summary judgment with respect to Chancellor's § 1983 claim against them in their individual capacity. *See Leverington*, 643 F.3d at 728 ("Because Ms. Leverington's statement as alleged was not on a matter of public concern, the district court properly dismissed her claim against Memorial, and we need not reach the other prongs of the *Garcetti/Pickering*

test."); *Brammer–Hoelter*, 492 F.3d at 1203 ("If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.").[4]

### B.  Official Capacity Claim

Plaintiff is also pursuing a claim against the individual defendants in their official capacity, which seeks prospective injunctive relief pursuant to § 1983 for the alleged violation of her First Amendment rights.  Such official capacity claims are permitted in limited circumstances, *see Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222 (10th Cir. 2010), however, having found no First Amendment violation, plaintiff's official capacity claim is likewise subject to summary judgment.  For that same reason, the Court also need not address the issue of qualified immunity arguably raised by the individual defendants.  *See, e.g., Allen Oil & Gas, LLC v. Klish,* 113 F. App'x 869, 870 (10th Cir. 2004).

### II.  Chancellor's *Burk* Tort Claim against Sportsmen Acres

In addition to her First Amendment claims brought under § 1983, plaintiff alleges a claim against Sportsmen Acres for common law wrongful termination under *Burk v. K-Mart Corp.*, 770 P.2d 24, also known as a "*Burk* claim."  In this removed action, plaintiff's state law tort claim is before the Court by virtue of the Court's supplemental jurisdiction under 28 U.S.C. § 1367.  As a court of limited jurisdiction, this Court is obligated to examine whether it should continue to exercise supplemental jurisdiction over plaintiff's state law *Burk* claim.  *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 (10th Cir. 2004) (finding lack of supplemental jurisdiction over state law claims *sua sponte*).

---

[4]  Having found no First Amendment violation, the Court also need not address the issue of qualified immunity.  *See, e.g., Allen Oil & Gas, LLC v. Klish,* 113 F. App'x 869, 870 (10th Cir. 2004).

10

In light of this Court's determination that summary judgment should be, and is, granted with respect to plaintiff's § 1983 claims – the basis for the Court's original jurisdiction in this case – there are no remaining federal question claims in this case. In the notice of removal, the sole basis for jurisdiction alleged was the existence of a federal question; namely plaintiff's § 1983 claims. Neither party has asserted diversity as a basis for jurisdiction, and it appears from the record that diversity is not present in this case. Under the circumstances presented here, the Tenth Circuit has recognized that the preferred practice is to decline to exercise supplemental jurisdiction over a remaining state law claim where a basis for original jurisdiction is no longer present. *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (affirming district court's decision to decline supplemental jurisdiction over state law negligence claim where summary judgment was granted as to § 1983 claims against political subdivision of state); *Lawler v. QuikTrip Corp.*, 172 F. App'x 873, 877 (10th Cir. 2006) (affirming district court's summary judgment order dismissing state law claims under 28 U.S.C. § 1367); *see also Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims"). Instead of dismissing plaintiff's state law *Burk* claim without prejudice, this remaining state law claim shall be remanded to the Mayes County District Court for further proceedings. *See Schachter v. PacifiCare of Oklahoma, Inc.*, 923 F. Supp. 1448, 1453 (N.D. Okla. 1995).

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment by Defendants Rex Morgan, Dennis Logan, and Dusty Brower (Doc. 14) is **granted** as to plaintiff's § 1983 claims. The Motion for Summary Judgment by Defendant Town of Sportsmen Acres (Doc. 12) is **moot** to the extent it seeks summary judgment as to plaintiff's *Burk* claim. Plaintiff's Motion for Partial Summary Judgment, and Brief in Support (Doc. 17) is **denied** to

the extent it seeks summary judgment as to her § 1983 claims and **moot** as to her *Burk* claim. Defendants' Motion in Limine (Doc. 16) and plaintiff's Motion in Limine and Brief in Support (Doc. 18) are **moot**.

**IT IS FURTHER ORDERED** that the plaintiff's state law *Burk* claim is hereby **remanded** to the Mayes County District Court.

**SO ORDERED** this 3rd day of June, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE